UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

THOMAS A. REDD,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

Hon. Sally J. Berens

Case No. 1:20-cv-222

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision.

For the following reasons, the Court will vacate the Commissioner's decision and remand the matter for further factual findings pursuant to sentence for of 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether

there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff filed an application for DIB on January 2, 2018, alleging that he had been disabled since June 2, 2017, as a result of multifaceted cognitive loss, seizure disorder, cerebrovascular disease (CVA or stroke), low sodium, and anxiety/low energy depression. Plaintiff was 59 years old at the time of the alleged onset date. (PageID.146–47.) Plaintiff had previous employment as

the Vice President of marketing for Retail Technology and Global Vice President of Strategic Communications for SAP Labs LLC. (PageID.363.) After Plaintiff's application was denied, he requested a hearing before an Administrative Law Judge (ALJ).

ALJ William G. Reamon conducted a hearing on April 16, 2019, and received testimony from Plaintiff and Sandra Smith-Cordingly, an impartial vocational expert. On June 18, 2019, the ALJ issued a written decision finding that Plaintiff was not entitled to benefits because he was not disabled from June 2, 2017, through the date of the decision. The Appeals Council denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432,434 (6th Cir. 2007). Plaintiff initiated this civil action for judicial review on March 12, 2020.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f).

3

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 2, 2017. At step two, the ALJ found that Plaintiff suffered from the severe impairments of epilepsy, cerebrovascular accident (stroke), anxiety disorder, and neurocognitive disorder. (PageID.67.) The ALJ determined that Plaintiff's diagnosis of lichen planus of the nails with chronic paronychia of the nail folds was non-severe. (*Id.*) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ specifically considered Listings 11.02, 12.02, and 12.06. (PageID.67–68.)

With respect to Plaintiff's RFC, the ALJ determined that Plaintiff retains the capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(a), except that he: (1) can frequently climb ramps and stairs and never climb ladders, ropes, or scaffolds; (2) can frequently crawl but needs to avoid all exposure to hazards; (3) can tolerate no exposure to dangerous moving machinery, such as forklift operation or commercial driving, or unprotected heights; (4) cannot perform any work involving swimming; (5) can perform no work above an SVP level of 2; and (6) can tolerate occasional interaction with co-workers and the public, and can perform work that only involves occasional changes in the work setting or work processes. (PageID.70.)

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a Vice President. (PageID.74–75.) At step five, the ALJ also found that Plaintiff could perform other jobs existing in significant numbers in the national economy that the vocational expert identified based on the ALJ's hypothetical questions. Those jobs included: (1) hand packager, DOT code 920.587-018 (100,000 jobs nationally); (2) food service worker, DOT code 319.677-014 (85,000 jobs nationally); and (3) laundry laborer, DOT code 361.687-018 (45,000 jobs nationally). (PageID.76, 139–40.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("Six thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## Discussion

Plaintiff raises six arguments, five of which concern the ALJ's RFC determination. The sixth concerns the step five determination.

### I. Plaintiff's RFC

RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. § 416.927(d). A claimant's RFC is the most that the claimant can do after considering the effects

5

of all impairments on the ability to perform work-related tasks. 20 C.F.R. § 416.945. "The ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). The ALJ should consider all the claimant's impairments, including those that are not severe, in evaluating the claimant's RFC. *See Hedges v. Comm'r of Soc. Sec.*, 725 F. App'x 394, 395 (6th Cir. 2018) (per curiam) ("[O]nce an ALJ finds that a claimant has at least one severe impairment at step two of the disability analysis, the ALJ must then 'consider the limiting effects of *all* [the claimant's] impairment(s), even those that are not severe' in evaluating the claimant's ability to work in step four.") (quoting 20 C.F.R. § 404.1545(e)).

### A.   Failure to Include or Explain Social Issues

The ALJ found the opinions of Judy Strait, Psy.D., the state agency psychological consultant, "persuasive," noting that, among other things, Dr. Strait opined that Plaintiff's "social functioning was reduced and [he] might not work well with the public," and that "[h]e might work best alone or in a small, familiar group." (PageID.73.) The ALJ did not adopt these limitations, but instead included the limitation that Plaintiff "can tolerate occasional interaction with co-workers and the public." (PageID.70.) Plaintiff argues that remand is required because the ALJ failed to explain why he did not incorporate Dr. Strait's "persuasive" limitations into the RFC. (ECF No. 12 at PageID.643–44.) The Commissioner responds that remand is not required because an ALJ is not required to incorporate a medical source's opinion word-for-word, and the ALJ reasonably accounted for Dr. Straight's limitations by including restrictions on working with the general public and coworkers. (ECF No. 13 at PageId.670–71.)

When an ALJ's RFC determination conflicts with a medical source opinion, he must explain why that opinion was not adopted. SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996) (ALJs must explain the weight the given to a state agency opinions); *see also Reynolds v. Comm'r*

6

*of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that an ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record'" (quoting 5 U.S.C. § 557(c)(3)(A))). While "there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim," *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015), "the ALJ must meaningfully explain why certain limitations are not included in the RFC determination—especially when such limitations are set forth in opinions the ALJ weighs favorably." *Howard v. Comm'r of Soc. Sec.*, No. 3:14-cv-364, 2015 WL 8213614, at *4 (S.D. Ohio Dec. 9, 2015) *report and recommendations adopted*, 2016 WL 99114 (S.D. Ohio Jan. 7, 2016) (citing *Hann v. Colvin*, No. 12-cv-06234-JCS, 2014 WL 1382063, at *22 (N.D. Cal. Mar. 28, 2014)) ("where an ALJ has already found a physician's opinions to be credible and concrete, an ALJ can err by omitting aspects of that physician's opinions from the RFC").

Although the Commissioner suggests that the ALJ's limitations simply restated Dr. Strait's opinions, that is not clear from the decision. With regard to social limitations, courts have distinguished limitations that concern "the quality or nature of interactions" from limitations that concern "the quantity of time involved with those interactions." *Kilgore v. Saul*, No. 1:19-CV-168, 2021 WL 932019, at *7 (E.D. Tenn. Mar. 11, 2021); *see also Corey v. Comm'r of Soc. Sec.*, No. 2:18-cv-1219, at *4 (S.D. Ohio July 17, 2019) ("Significantly, limiting the quantity of time spent with an individual does not accommodate a limitation relating to the quality of the interactions.") (citing *Lindsey v. Comm'r Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) ("'Occasional contact' goes to the quantity of time spent with [ ] individuals, whereas 'superficial contact' goes to the quality of the interactions.") (quoting *Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)). Although the parties do

not address this issue, the Court interprets Dr. Strait's limitations as pertaining the *quality* of interactions with the public and coworkers, rather than the *quantity* of such interactions. In contrast, the ALJ's limitation pertains to *quantity*. Occasional "means occurring from very little up to one-third of the time . . . ." SSR 96-6p, 1996 WL 374180, at *3. Because the ALJ's limitation would allow Plaintiff to interact with the public and all of his coworkers (not just a small group) up to one-third of the time, it does not address the concerns raised in Dr. Straight's limitations.

Accordingly, remand is required to allow the ALJ to explain why he found Dr. Straight's opinions persuasive but failed to include her limitations or to explain how the RFC accommodated those limitations.

### B. Two Step Tasks

Plaintiff argues that the ALJ erred by including a limitation to "no work above SVP 2" that fails to account for Dr. Strait's limitation to two-step tasks, which falls within the category of reasoning level 1 as defined by the Dictionary of Occupational Titles. Plaintiff argues that any error is not harmless because two of the jobs the ALJ cited at step five are reasoning level 2 or higher, which is at odds with Dr. Straight's two-step task limitation. (ECF No. 12 at PageID.645.) The Commissioner implicitly concedes the error, arguing that the issue is immaterial because one job—laundry laborer—remains, which is permissible under Sixth Circuit law because a significant number of jobs remain that Plaintiff can perform. (ECF No. 13 at PageID.671–72.) This issue is moot in light of the Court's decision to remand, but the ALJ may address it in his RFC determination on remand.

### C. Limitations Regarding Concentration, Persistence, or Pace

Plaintiff argues that the ALJ's limitations as to concentration, persistence, or pace are not supported by the record for several reasons. This argument generally focuses on the ALJ's

evaluation of the opinion evidence pertaining to Plaintiff's mental limitations and reliance on evidence regarding mental status examination findings and symptoms of depression and anxiety.

As noted above, the ALJ found Dr. Strait's opinions persuasive because they were consistent with and supported by the medical evidence of record. Dr. Strait opined that Plaintiff was moderately limited in concentrating, persisting, or maintaining pace. (PageID.73, 155.) The ALJ found the opinions of Matt Schoeck, M.D., "not persuasive." Dr. Schoeck opined that Plaintiff was unable to concentrate for more than 15 minutes at a time, had short-term memory deficits, was unable to multi-task, and was unable to work with others, give supervision, or work cooperatively with others in a group setting. (PageID.73, 593.) Finally, the ALJ found the opinions of neuropsychologist George Prigatano, who examined Plaintiff and administered tests on May 4, 2017, "generally persuasive." (PageID.74.) Dr. Prigatano found that Plaintiff had a full-scale IQ score of 96 but had difficulty with concentration and attention. (PageID.523–24.) The ALJ found that Dr. Prigatano's opinions were consistent with results of testing by Jacobus Donders, Ph.D., at Mary Free Bed Rehabilitation Hospital on November 21, 2018.

Plaintiff first argues that the ALJ failed to recognize that Dr. Straight was not privy to Dr. Schoeck's assessment as to functioning and Dr. Donders's November 21, 2018 neuropsychological examination and that Dr. Strait never treated or examined Plaintiff. The Court disagrees. The ALJ specifically noted that Dr. Strait rendered her opinion on February 28, 2018, and discussed the evidence generated after this date, including Dr. Donders's examination results, to determine the consistency of Dr. Strait's opinions with the entire record. Moreover, the ALJ's statement that Dr. Strait's opinions "were supported by her specialized experience in evaluating mental impairments and her program knowledge of the Social Security Administration's disability assessment rules and criteria" implicitly acknowledged that Dr. Strait did not examine Plaintiff. (PageID.73.)

9

Plaintiff next argues that the ALJ erred in evaluating Dr. Schoeck's opinion. The ALJ found Dr. Schoeck's opinions inconsistent with Plaintiff's ability to ride a motorcycle during the period in question. The ALJ observed that "[o]perating a motorcycle on the road requires concentration and multi-tasking actions" (PageID.73), which undermined Dr. Schoeck's opinions that Plaintiff was unable to concentrate for more than 15 minutes at a time and was unable to multi-task. The ALJ further pointed to normal mental status exam findings and Plaintiff's denials of symptoms of depression and anxiety as an additional basis for discounting Dr. Schoeck's opinions. Plaintiff contends that the ALJ's reliance on Plaintiff's ability to ride a motorcycle was misplaced because Plaintiff learned to ride prior to his stroke and he had only ridden it one time on a trip that took about 30–45 minutes.[2] (ECF No. 12, at PageID.647.) Plaintiff's argument is unpersuasive, as the ALJ drew a reasonable conclusion from the evidence. While riding a motorcycle for a short trip might not show that a claimant can sustain attention and concentration for an eight-hour workday, it nonetheless undermines Plaintiff's assertion that his attention and concentration were so limited that he could not perform simple, unskilled work.

Plaintiff next argues that the ALJ's evaluation of Dr. Prigatano's opinions as "generally persuasive" was flawed as Dr. Prigatano did not conclude that Plaintiff was capable of performing unskilled work on a sustained basis. Plaintiff further notes that, in his November 2018 assessment, Dr. Donders wrote that "in specific areas of cognitive functioning (especially sustained attention as well as independent and efficient problem-solving), he is struggling to a clinically significant degree." (PageID.613.) Contrary to Plaintiff's assertion, nothing in the ALJ's decision suggests

---

[2] Plaintiff asserts that Dr. Schoeck based his opinions on Dr. Donders's November 2018 examination findings, but this is incorrect. (ECF No. 12 at PageID.646.) Dr. Schoeck issued his opinion on August 9, 2018—several months before Dr. Donders examined Plaintiff. (PageID.593.)

that he attributed Dr. Donders's report to Dr. Prigatano.[3] In fact, the ALJ recognized that Dr. Donders's findings, which relied on Dr. Prigatano's previous findings as a baseline, were that although Plaintiff demonstrated some difficulty in concentration and attention, there was no evidence that his mental status had deteriorated. (PageID.74.) Moreover, although Dr. Prigatano found that Plaintiff had deficits in areas of concentration and attention, he did not opine that Plaintiff was incapable of performing simple, unskilled work. In any event, the ALJ reasonably accounted for Plaintiff's deficits in cognitive functioning by including mental and social limitations in the RFC.

Finally, Plaintiff argues that the evidence the ALJ cited did not support his assertion that Plaintiff exhibited normal mental status findings throughout the period. This argument lacks merit. While it is true that some of the records the ALJ cited did not contain mental status exam findings (*see* PageID.465, 467, 472, 474), the ALJ cited those exhibits as support for his finding that Plaintiff denied symptoms of depression and anxiety. Moreover, the remaining exhibits (PageID.567, 618, 621, 625), contained mental status findings that were normal.

Therefore, this argument lacks merit.

### D. Evaluation of Subjective Symptoms

Plaintiff next contends that the ALJ erred in assessing his subjective symptoms. SSR 16-3p guides an ALJ in evaluating a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability. "While SSR 16-3p eliminated the use of the term 'credibility,' the regulatory analysis remains the same." *Karmol v. Comm'r of Soc. Sec.*,

---

[3] Plaintiff also takes issue with the ALJ's reliance on Dr. Prigatano's intelligence quotient (IQ) test results as a basis for finding his opinions persuasive. Plaintiff asserts that an IQ score not indicative of the ability to concentrate and maintain attention, but that is not necessarily true. In any event, the ALJ noted that Dr. Prigatano found that Plaintiff had some difficulties with concentration and attention, which was consistent with other medical evidence in the record.

No. 1:17-cv-977, 2019 WL 1349485, at *3 (W.D. Mich. Mar. 26, 2019). As explained in *Palmer v. Commissioner of Social Security*, No. 1:17-cv-577, 2018 WL 4346819 (W.D. Mich. Aug. 9, 2018), *report and recommendation adopted*, 2018 WL 4334623 (W.D. Mich. Sept. 11, 2018):

> The longstanding two-part analysis for evaluating symptoms applies. 20 C.F.R. § 404.1529(a). "An ALJ must first determine 'whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.' If such an impairment exists, the ALJ 'must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.'" *Morrison v. Commissioner*, 2017 WL 4278378, at *4 (quoting *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007)). Relevant factors to be considered in evaluating symptoms are listed in 20 C.F.R. § 404.1529(c)(3). "It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Commissioner*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases); *see also Carsten v. Commissioner*, No. 15-14379, 2017 WL 957455, at *4 (E.D. Mich. Feb. 23, 2017). *Id.* at *6.

Consistent with prior ruling SSR 96-7p, *see Rogers*, 486 F.3d at 248, SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10. Moreover, the same rules of review apply to an ALJ's assessment of a claimant's symptoms under SSR 16-3p that applied to a credibility assessment under SSR 96-7p. That is, the ALJ's determination must be afforded deference so long as it is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* The Sixth Circuit has said that such findings "may not be disturbed absent compelling reason," and in general, "are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation marks omitted).

Plaintiff argues that the ALJ's evaluation was contrary to SSR 16-3p in several respects. First, he asserts that the ALJ fails to explain how his finding that the "longitudinal treatment history" of Plaintiff's seizures was inconsistent with Plaintiff's statements regarding the persistence and limiting effects of his symptoms because his last seizure occurred on January 13, 2017—before the period in question—and Plaintiff had not had a seizure since his medications were changed. (PageID.71.) In particular, Plaintiff asserts that it is not clear how this evidence is inconsistent with his statements regarding his symptoms. The Court agrees. While it is true that Plaintiff listed his seizure disorder as an impairment in his application, the record shows that the January 13, 2017 seizure led to the stroke that produced the cognitive and attention deficits that Plaintiff claims render him disabled. Given that Plaintiff's primary allegation in this case is that his cognitive and attention deficits are work preclusive, the ALJ fails to explain sufficiently how the lack of seizures during the relevant period is at odds with his statements concerning his symptoms of his cognitive and attention deficits.

Next, Plaintiff argues that it is unclear how Dr. Donders's November 2018 neuropsychological assessment, which the ALJ cited, contradicts Plaintiff's statements regarding his cognitive and attention deficits. The ALJ stated that, although Dr. Donders found that Plaintiff demonstrated some difficulty in cognitive functioning, there was no evidence of further deterioration of his mental status compared to Dr. Prigatano's 2017 examination, and Dr. Donders recommended that Plaintiff engage in outpatient psychotherapy and regular physical exercise. (PageID.71–72.) But Dr. Donders also reported that in the areas of sustained attention and independent and efficient problem-solving, Plaintiff struggled "to a clinically significant degree," that he had "very slow reaction time" on a test of sustained attention and vigilance, and on a test of novel problem solving, he took an extended time to answer that would not be nearly competitive

13

for most jobs. (PageID.612–13.) The ALJ fails to articulate clearly how Dr. Donders's examination findings undermine, rather than support, Plaintiff's subjective complaints.

Plaintiff further argues that the ALJ failed to explain why physical examination findings of normal strength and gait contradict his subjective complaints when he has not alleged problems with strength or gait during the relevant period. The Commissioner responds that physical examination findings were relevant to the listing for epilepsy, which requires the presence of seizures and marked limitations in one of several areas, including physical functioning. (ECF No. 13 at PageID.664–65.) Even so, this does not explain why the ALJ discounted Plaintiff's credibility based on limitations that Plaintiff does not assert.

Plaintiff also contends that the ALJ attacked his character for truthfulness, contrary to SSR-16-3p, when he stated that "[a]lthough the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, the inconsistencies suggest that the information provided by the claimant generally may not be reliable." (PageID.72.) Although the ALJ's statement hints at an assessment of Plaintiff's character rather then the credibility of his symptoms, absent the reasons cited above, the Court would not find this a sufficient independent reason for remand because the ALJ's decision nonetheless indicates that he relied on proper considerations in his analysis. *See Gilliam v. Comm'r of Soc. Sec.*, No. 2:18-cv-12793, at *12 (E.D. Mich. July 10, 2019), *report and recommendation adopted*, 2019 WL 4051746 (E.D. Mich. Aug. 28, 2019).

### E. Evaluation of Physical Impairment

Plaintiff finally argues that the ALJ erred in his RFC assessment by failing to consider all of the evidence relating to Plaintiff's lichen planus of the nails with chronic paronychia of his nail folds. The ALJ found the condition non-severe because Dr. Gielczyk did not opine that these impairments would limit Plaintiff's functional abilities, and Plaintiff's reported daily activities

14

were inconsistent with Dr. Gielczyk's statements about the potential limitations from these conditions. (PageID.67.) Plaintiff contends that the ALJ's decision suggests that he failed to consider evidence pertaining to these conditions, including Dr. Donders's note from the November 2018 evaluation that: (1) Plaintiff wore Band-Aids on his right fingers: (2) the tips of his left fingernails were peeling and in poor condition; and (3) due to loss of sensation, Dr. Donders omitted some testing tasks on which fine sensory/motor coordination would have been at a premium. (PageID.612.) Plaintiff also contends that the ALJ failed to consider pictures in the record depicting the condition of Plaintiff's nails in August 2018. (PageID.628–29.)

While it is not clear from the ALJ's decision whether he considered that evidence, the Court need not decide whether the ALJ erred as Plaintiff may bring it to the ALJ's attention on remand.

## II. Step Five Issues

Last, Plaintiff contends that the jobs the ALJ identified at step five, as well as his hypothetical to the vocational expert, conflict with the RFC. In light of the RFC issues for remand identified above, the Court need not address Plaintiff's arguments. Nonetheless, Plaintiff's argument the ALJ was required to take administrative notice of *both* the Dictionary of Occupational Titles and the Occupational Outlook Handbook with regard to the job of hand packager is without merit. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 158 (6th Cir. 2009) ("[W]hile the ALJ is certainly authorized to take administrative notice of job data from various sources, including the testimony of Poe's own vocational expert, he was not required to accept Breslin's opinion over that of the vocational expert who based his opinion on the contents of the DOT."). Here, the job of hand packer from the DOT that the ALJ identified at step five is consistent with the RFC. *See DOT 920.587-018 Packager, Hand*, 1991 WL 687916 (4th ed. 1991).

15

## CONCLUSION

For the reasons stated herein, the Commissioner's decision will be **reversed and remanded** for further consideration consistent with this Opinion pursuant to sentence four of 42 U.S.C. § 405(g).

An Order consistent with this Opinion will enter.


Dated: May 17, 2021                                          /s/ Sally J. Berens
                                                                         SALLY J. BERENS
                                                                         U.S. Magistrate Judge